**LAW OFFICES OF NICHOLAS J. PALMA, ESQ., P.C.**
Valerie Palma DeLuisi, Esq.
1425 Broad Street, Second Floor
Clifton, New Jersey 07013
Phone: 973-471-1121
Facsimile: 973-472-0032
VPD@PalmaLawFirm.com
*Attorney for Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| PBA LOCAL 183, DOLORES M. PALADINO and MARISOL PAGAN,<br>　　　　　Plaintiffs,<br><br>　　　　　　v.<br><br>COUNTY OF ESSEX,<br>　　　　　　Defendant. | Civil Action No.:<br><br>**COMPLAINT & JURY DEMAND** |

PLAINTIFFS PBA LOCAL 183, DOLORES M. PALADINO and MARISOL PAGAN, by way of Complaint against the County of Essex, do hereby state as follows:

## **PARTIES**

1. Plaintiff PBA Local 183 is the exclusive majority representative for approximately 350 Sheriff's Officers and Investigators below the rank of Sergeant employed by the County of Essex. PBA Local 183 is headquartered at 50 West Market Street, in the City of Newark, County of Essex, State of New Jersey.

2. Plaintiff Dolores M. Paladino, residing at 34 Berkeley Avenue, in the Township of Belleville, County of Essex, State of New Jersey, at all times relevant herein was and is employed by the County of Essex as a Detective in the Essex County Sheriff's Department, assigned to the K-9 Unit.

3. Plaintiff Marisol Pagan, residing at 78 Holmes Street in the Township of Belleville, County of Essex, State of New Jersey, at all times relevant herein, was and is employed by the

County of Essex as a Detective in the Essex County Sheriff's Department, assigned to the K-9 Unit.

4. Defendant County of Essex is a governmental entity organized under the laws of the State of New Jersey, with its principal offices located at the Hall of Records, 465 Dr. Martin Luther King, Jr. Blvd., in the City of Newark, County of Essex, State of New Jersey.

## JURISDICTION

5. United States District Court for the District of New Jersey has original subject matter jurisdiction over this matter, pursuant to 28 U.S.C. § 1331.

6. United States District Court for the District of New Jersey has supplemental jurisdiction over New Jersey State Law claims that form part of within case and controversy, pursuant to 28 U.S.C. § 1367.

## VENUE

7. Venue is properly vested in the United States District Court for the District of New Jersey, pursuant to 28 U.S.C. § 1391, as all Plaintiffs and the defendant reside or are headquartered in the State of New Jersey, and the claims herein arose within the jurisdictional limits of the United States District Court for the District of New Jersey.

## FACTUAL BACKGROUND

8. Plaintiff Paladino was hired by the County of Essex as an Officer in Essex County Sheriff's Department in 2001 and was assigned to the K-9 Unit in 2005.

9. Plaintiff Pagan was hired by the County of Essex as an Officer in Essex County Sheriff's Department in 2005 and was assigned to the K-9 Unit in 2010.

10. Canine members of the K-9 Unit serve and protect the public as highly trained, integral members of the Essex County Sheriff's Department.

11. It is an established practice of the K-9 Unit for the Officers assigned to the Unit to pay for and adopt their canine partners, and to have their canine partners reside in their homes, with the Officer being responsible for the training, walking, feeding, grooming, cleaning, bonding, exercise, daily health inspections and veterinary visits of their canine partners, while Defendant assumed responsibility for funding the lifetime care and maintenance of the canine.

12. In accordance with this established practice of the K-9 Unit, Plaintiffs Paladino and Pagan both personally paid for and personally adopted their canine partners, and both are responsible for the training, walking, feeding, grooming, cleaning, bonding, exercise, daily health inspections and veterinary visits of their canine partners.

**Defendant Willfully and Continuously Violates the Fair Labor Standards Act ("FLSA")**

13. Defendant County of Essex is and has been fully aware that care of K-9 Unit canines is deemed by the Courts of New Jersey as reasonably related to the principal activity of K-9 Unit officers.

14. Defendant is and has been fully aware of Plaintiffs Paladino and Pagan's entitlement to overtime compensation for the time spent working to care for their canine partners.

15. Despite Defendant's knowledge, Plaintiffs Paladino and Pagan have never received compensation for the hours worked caring for their canine partners.

16. Defendant also fails to pay overtime at a rate of one and one-half times the hourly rate of Plaintiffs Paladino and Pagan for assigned hours worked in excess of FLSA regulations.

17. As a result of Defendant's actions, Plaintiffs Paladino and Pagan have suffered and continue to suffer substantial and severe monetary damages.

**Defendant Forced Two of Plaintiff Paladino's Canine Partners into Retirement and then Forced Plaintiff Paladino to be Solely Responsible for their Medical Bills**

18. It is an established pattern and practice of the K-9 Unit that once a canine has been a service canine, Defendant pays for the veterinary care of the canine for the remainder of the canine's life, up to and including paying for euthanasia at the end of the canine's life.

19. Since joining the K-9 Unit in 2005, Plaintiff Paladino has had two of her canine partners retired by Defendant and has been forced by Defendant to take personal responsibility for any and all medical care of those two retired canine partners.

20. By way of background, the first of the two retired canine partners of Plaintiff Pagan was a German Sheppard named "Nero", who was trained in explosives detection. When Plaintiff Pagan joined the K-9 Unit in 2005, she was *assigned* Nero, who was three years old and owned by Defendant. Nero and Plaintiff Pagan were partners from approximately 2005 through 2009. In 2009, Nero was diagnosed with cancer. Upon learning of Nero's cancer diagnosis, Defendant retired Nero from service and *ordered* Plaintiff Pagan to adopt Nero. Plaintiff Pagan followed orders and adopted Nero. Once Nero was retired and adopted by Plaintiff Pagan, Defendant refused to pay for the care and maintenance of Nero, including refusal to pay for Nero's medical bills. Plaintiff Pagan incurred significant financial expense paying for Nero's medical care and ultimately, his euthanasia. Nero died in 2009, and so it is understood the applicable Statute of Limitations has passed for recovery of the significant expenses incurred by Plaintiff Pagan; however, Plaintiff offers this information as same is relevant to the remainder of the allegations in this Complaint.

21. When Nero died in 2009, Plaintiff Paladino adopted and paid for "Justin", a German Sheppard who has been trained in explosives detection.

22. Justin was Plaintiff Paladino's partner from 2009 until approximately 2015.

23. In 2015, Defendant obtained a canine named "Marko" through the New Jersey State Police Render Safe Task Force, partnered Plaintiff Paladino with Marko and forced Justin into retirement.

24. Once Defendant retired Justin, Defendant refused to pay for Justin's medical care.

25. Justin still resides with Plaintiff Paladino, and Plaintiff Paladino continues to be financially responsible for Justin's medical care.

26. Plaintiff Paladino has incurred significant expense and suffered, and continues to suffer, severe monetary damages as a result of being forced to bear the expenses of her retired canine partner, Justin.

**Defendant Improperly "Grounded" the Assigned Vehicles of Plaintiffs Paladino and Pagan, and Improperly Attempted to Force-Kennel Their Canines**

27. It is the established pattern and practice of the K-9 Unit that members of the Unit have each been assigned a patrol vehicle (hereinafter referred to as a "County vehicle"), specially equipped for use with a canine partner, and that said members were permitted to utilize these County vehicles to drive with their canine partners to and from their homes at the beginning and end of their work shifts.

28. In accordance with the established pattern and practice of the K-9 Unit, Plaintiffs Paladino and Pagan were each assigned a specially equipped County vehicle upon joining the K-9 Unit.

29. There have been, and currently are, enough County vehicles for each member of the K-9 Unit to be assigned one.

30. In June 2015, retired K-9 Unit member Dean Galluccio filed a lawsuit against the County of Essex in the United States District Court for the District of New Jersey[1], for violations of the FLSA.

31. As a direct result of said lawsuit, Essex County Sheriff Armando Fontoura called a meeting with the K-9 Unit. During said meeting, in the presence of Plaintiffs Paladino and Pagan, Sheriff Fontoura advised the aforementioned Plaintiffs and their gathered colleagues "One of your own filed a lawsuit because he is ungrateful, so I am grounding your vehicles[2]. If you don't like it, you can quit and there will be 100 people lining up to take your place".

32. Sheriff Fontoura then improperly ordered members of the K-9 Unit to kennel their canine partners at the K-9 Unit's headquarters in West Orange, at all times the canines were not "on duty" with their human partners.

33. Superior Officers in the K-9 Unit were given explicit explanations as to why kenneling the canines creates an unhealthy and unsafe condition for the canines and also creates a safety risk for the canine and their human partner out in the field, which leads to a significant public safety risk.

34. All explanations and pleas for reconsideration were and continue to be ignored, and the policy of forced kenneling was and remains implemented.

35. The K-9 Unit of Essex County Sheriff's Department utilizes the Bond Based Approach of canine partnership.

---

[1] Civil Action No.: 2:15-cv-03893
[2] "Grounding your vehicles" meant that the Detectives were no longer permitted to bring their specially equipped County vehicles home with them at the beginning and end of their shifts.

36. It is well established that one of the key elements to the Bond Based Approach is that the canine resides in the home of their human partner, so that the bond between the canine and their human partner may form and flourish.

37. Forced kenneling of canines is contrary to a material element of the Bond Based Approach; and as a result of forced kenneling, canines may have reduced effectiveness while on duty, which creates a significant safety risk for the canine, the canine's human partner and the general public.

38. There are significant health and safety risks to the canines, their human partners and the general public if the canines are kenneled at the West Orange facility when they are off duty. These risks include but are not limited to: (a) the emotional trauma to the canine, which often gives rise to stress-induced physical illness, leading to delayed and/or diluted response while working; (b) the very high risk of contagious illness spreading between canines, which may lead to delayed and/or diluted response while working, or in an extreme case, may lead to the canine being retired from service; (c) the strong likelihood that the canines will revert to a pack mentality, thereby creating skirmishes between canines as they fight for a pecking order among themselves, which can lead to injury of the canines; (d) The bond between the canine and their human partner will be greatly reduced and the replaced with the canine's "new pack" of other canines, which will very likely lead to a delayed and/or diluted response while working; and (e) the canines are left entirely unsupervised in the kennel for approximately nine (9) to ten (10) hours each weeknight and approximately sixteen (16) hours each day of the weekend, thereby making it impossible to ascertain if there is a health or safety crisis underway.

39. Plaintiffs Paladino and Pagan are the legal owners of their canine partners and they are responsible for the care and well-being of their canines. Due to the numerous kennel-induced

psychological, health and safety risks for the canine partners they legally own, as well as to themselves, their families and the general public, Plaintiffs Paladino and Pagan believe they should not, and cannot be legally forced to, kennel their canine partners in accordance with Sheriff Fontoura's directive. Instead, Plaintiffs Paladino and Pagan continue to have their canine partners reside in their homes.

40. Furthermore, Plaintiff Paladino has already been forced to personally pay for the medical bills of her two retired canine partners. Defendant should not be permitted to place canines at risk and then force their handlers to bear the financial responsibility for the canine's medical bills if the canines must be retired from service.

41. Due to the improper grounding of their County vehicles, Plaintiffs Paladino and Pagan are forced to transport their canine partners to and from their homes to the K-9 Unit's headquarters at the beginning and end of their work shifts.

42. There are substantial safety risks to the canine, the canine's human partner and the general public when members of the K-9 Unit are forced to transport their canine partners in their personal vehicles.

43. In addition, the personal vehicles of Plaintiffs Paladino and Pagan have been damaged by their canine partners during transport, thereby causing severe monetary damage to Plaintiffs Pagan and Paladino, for which Plaintiffs Paladino and Pagan are entitled to compensation.

44. There is also a significant financial expense and significant time expenditure for Plaintiffs Paladino and Pagan to clean and maintain their personal vehicles while transporting their canine partners, both long haired German Sheppards, to and from their homes to the West Orange Headquarters of the K-9 Unit, at least five (5) times per week.

45. Plaintiffs Paladino and Pagan have suffered and continue to suffer substantial and severe monetary damages as a result of transporting their canine partners to and from the K-9 Unit's West Orange headquarters in their personal vehicles.

**Defendant Violates New Jersey Attorney General Mandatory K-9 Training Standards**

46. The New Jersey Attorney General set forth mandatory K-9 Training Standards in 1992, which were revised in 1995 and 2002[3].

47. The Attorney General Mandatory Guidelines specifically state "Compliance with these mandatory standards is the responsibility of the chief executive officer of the agency sponsoring the training and the chief executive officer of the agency conducting or utilizing K-9 operations." Ex. "A", *supra.* at 1.

48. The Attorney General Mandatory Guidelines state "In addition to the training standards established herein, law enforcement agencies with K-9 units or teams should establish clear policy and issue standard operating procedures on the use of police dogs." Id. at 2.

49. Plaintiffs have never seen Essex County Sheriff's K-9 Unit's standard operating procedures on the use of police dogs, if same even exists.

50. The Attorney General Mandatory Guidelines defines a K-9 Specialty Team as "A team consisting of a police officer handler and a specialty dog used in law enforcement specifically for scent work, detection or tracking work. Specialty teams are used for narcotics detection…explosive detection, tracking…" Id. at 3.

51. Pursuant to the Attorney General Mandatory Guidelines, Plaintiff Paladino is a "specialty team" with her canine partner, Buzzard, who is certified in explosives detection; and

---

[3] *See* **Exhibit "A"**: New Jersey Attorney General K-9 Training Standards and Qualification Requirements for New Jersey Law Enforcement, July 2002 Revision (hereinafter referred to as "Attorney General Mandatory Guidelines").

9

Plaintiff Pagan is a "specialty team" with her canine partner, Yankee, who is certified in narcotics detection. Additionally, Plaintiff Pagan is a "specialty team" with Mac, a canine who is certified in tracking[4].

52. The Attorney General Mandatory Guidelines require: "…K-9 Specialty Teams must complete in-service field training exercises in order to maintain skills which must be performed during re-evaluations. In-service training must be conducted a minimum of 4 times annually…" Id. at 7.

53. Defendant fails to train the K-9 Unit's specialty teams in accordance with the Attorney General Mandatory Guidelines.

54. The K-9 Unit does not currently employ a trainer certified within the standards of the Attorney General Mandatory Guidelines.

55. Plaintiffs have requested off-site training and have been denied.

56. The failure of Defendant to conduct training in accordance with the Attorney General Mandatory Guidelines has placed, and continues to place, the general public, the K-9 Unit's canines and their handlers at significant safety risk.

57. The Attorney General Guidelines also set forth specific criteria for training site or facility requirements. Ex. "A", *supra.* at 13.

58. The K-9 Unit's West Orange headquarters had a training course contained on the grounds of said facility. However, the training course is not maintained by Defendant and is now overgrown and decaying, thereby rendering it unsafe and inoperable.

59. Plaintiffs have alerted their superiors to these problems and no corrective action has been taken.

---

[4] Mac is a tracking canine who is shared between Plaintiff Pagan and another member of the K-9 Unit. Mac is "owned by" the K-9 Unit and not Plaintiff Pagan personally.

60. The K-9 Unit's lack of mandated training, lack of a certified trainer and lack of an operable training course poses a significant safety risk to the public that Defendant cannot be permitted to continuously ignore.

**COUNT ONE**
**(Violation of FLSA)**

61. Plaintiffs repeat and reallege the allegations set forth in the preceding paragraphs of this Complaint, as if set forth herein at length.

62. Defendant County of Essex is an employer, as defined by the FLSA, in accordance with 29 U.S.C. § 203, and as a public agency within the meaning of 29 U.S.C. § 203.

63. At all times relevant herein, Plaintiffs Paladino and Pagan are and were entitled to all rights, benefits and protections afforded by the FLSA.

64. At all times relevant herein, Defendant was and is fully aware of the provisions and requirements of the FLSA.

65. During the applicable statutory period, Plaintiffs Paladino and Pagan performed work for which they were not compensated in accordance with the FLSA. Particularly, Plaintiffs Paladino and Pagan worked in excess of the statutory maximum number of hours provided for in the FLSA without receiving compensation for such excess hours at a rate of one and one-half times the regular hourly rate of their compensation.

66. Failure by Defendant to compensate Plaintiffs Paladino and Pagan in accordance with the FLSA is a violation of said statute, and Plaintiffs Paladino and Pagan are accordingly entitled to relief.

67. Because Defendant is and at all times relevant herein was aware that Plaintiffs Paladino and Pagan are entitled to overtime compensation for the care of their K-9 Unit canines,

the failure by Defendant to compensate such overtime is a knowing, willful and/or reckless violation of the FLSA, which extends the applicable time for which Defendant is liable to Plaintiffs Paladino and Pagan, from two (2) years to three (3) years.

68. Defendant is liable to Plaintiffs Paladino and Pagan for unpaid overtime compensation, liquidated damages in an equal amount to unpaid overtime compensation, for reasonable attorney's fees and for costs of this action.

**WHEREFORE**, Plaintiffs Paladino and Pagan demand judgment against Defendant for violations of the Fair Labor Standards Act and for:

  i. Judgment declaring that Defendant has willfully, recklessly and knowingly violated its statutory and legal obligations and deprived Plaintiffs Paladino and Pagan of their rights, protections and entitlements under Federal Law, as alleged herein;

  ii. An Order for a complete and accurate accounting of all overtime compensation which Defendant has denied Plaintiffs Paladino and Pagan;

  iii. Monetary Damages for unpaid overtime compensation, liquidated damages in an equal amount to unpaid overtime compensation, prejudgment and post-judgment interest, reasonable attorney's fees and costs of this action; and

  iv. Such other relief as this Honorable Court deems equitable and just.

### COUNT TWO
### (Bar to Continued Violation of FLSA)

69. Plaintiffs repeat and reallege the allegations set forth in the preceding paragraphs of this Complaint, as if set forth herein at length.

70. Despite being fully aware of its obligations under FLSA, Defendant has continued to knowingly, willfully and recklessly violate FLSA.

71. The actions of Defendant have caused, are currently causing, and will continue to cause, severe damages to members of the K-9 Unit.

**WHEREFORE**, Plaintiff PBA Local 183 demands judgment against Defendant for violations of the Fair Labor Standards Act and for:

i. Judgment declaring that Defendant has willfully, recklessly and knowingly violated its statutory and legal obligations and deprived members of the K-9 Unit of their rights, protections and entitlements under Federal Law, as alleged herein;

ii. An Order compelling Defendant to immediately and permanently amend the compensation procedures of the K-9 Unit, in compliance with the FLSA;

iii. For reasonable attorney's fees and costs of suit; and

iv. For such other relief as this Honorable Court deems equitable and just.

### COUNT THREE
### (The Doctrine of Promissory Estoppel Requires Defendant to Pay for Lifetime Medical Care of Retired Canine Partners)

72. Plaintiffs repeat and reallege the allegations set forth in the preceding paragraphs of this Complaint, as if set forth herein at length.

73. Defendant, through its agents and employees, made certain promises to the K-9 Unit, including but not limited to the promise to pay for lifetime medical care of retired canines.

74. In making these promises to the K-9 Unit, Defendant knew or should have known that these promises would induce Plaintiff Paladino to personally adopt her canine partners, in reasonable reliance on Defendant's promises and representations.

75. Plaintiff Paladino did adopt her canine partners, in reasonable reliance on Defendant's promises and representations.

76. In violation of the promises and inducements made by Defendant, and in violation of the established pattern and practice of the K-9 Unit, Defendant forced two of Plaintiff Paladino's canine partners into retirement and thereafter refused responsibility for the care and maintenance of said retired canines, thereby forcing Plaintiff Paladino to assume any and all financial responsibility for her retired canine partners.

77. As a direct and proximate result of Defendant's failure to perform according to the promises and representations made to Plaintiff Paladino, and Plaintiff Paladino's reliance on those promises to her detriment, Plaintiff Paladino has suffered, and continues to suffer, substantial and severe monetary damages.

**WHEREFORE,** Plaintiff Paladino hereby demands judgment as follows:

i. For an Order compelling Defendant to reimburse Plaintiff Paladino for the care and maintenance of her canine partner, Justin, from the time he retired until present;

ii. For an Order compelling Defendant to pay for the care and maintenance of Justin henceforth, for the remainder of Justin's life; and

iii. For reasonable attorney's fees, liquidate damages and costs of suit; and for

iv. Other such relief as this Honorable Court deems equitable and just.

## COUNT FOUR
**(Compensation for Time and Reimbursement of Expenses Incurred as a Result of Transporting Canine Partners in Personal Vehicles)**

78. Plaintiffs Paladino and Pagan have suffered, and continue to suffer, severe and significant monetary damage as a result of being forced to transport their canine partners from their homes to the K-9 Unit's headquarters in West Orange.

79. Plaintiffs Paladino and Pagan are entitled to monetary compensation, in accordance with FLSA, for the time spent cleaning and maintaining their personal vehicles as a result of transporting their canine partners to and from work.

80. Plaintiffs Paladino and Pagan are also entitled to reimbursement for the expense of maintaining, cleaning and repairing their personal vehicles, as well as for loss to value of their vehicles, due to the transportation of their canine partners to and from work.

**WHEREFORE,** Plaintiffs hereby demand judgment against Defendant:

i. Declaring that Defendant improperly ordered members of the K-9 Unit to kennel the canine partners they legally own;

ii. Awarding compensation to Plaintiffs Paladino and Pagan for time spent cleaning and maintaining their personal vehicles, due to their canine partners being transported in said vehicles;

iii. Reimbursing Plaintiffs Paladino and Pagan for the expenses incurred cleaning, maintaining and repairing damage to their personal vehicles, due to their canine partners being transported in said vehicles;

iv. Reimbursing Plaintiffs Paladino and Pagan for loss of value to their personal vehicles, due to their canine partners being transported in said vehicles;

v. Compelling Defendant to reinstate use of the County vehicles to the K-9 Unit for transport of their canine partners to and from work; or in the alternative

vi. Compelling Defendant to hereafter create and adhere to a fair and reasonable compensation and reimbursement agreement with PBA Local 183, on behalf of the K-9 Unit, for the time and expense associated with transportation of canine partners to and from the homes of their handlers;

vii. For attorney's fees, liquidated damages and costs of suit; and

viii. For such other relief as this Honorable Court deems equitable and just.

## COUNT FIVE
### (Violation of New Jersey Attorney General Mandatory Guidelines on K-9 Training Standards and Qualification Requirements for New Jersey Law Enforcement)

81. Plaintiffs repeat and reallege the allegations set forth in the preceding paragraphs of this Complaint, as it set forth herein at length.

82. Defendant is required, under the Attorney General Mandatory Guidelines, to conduct training, maintain a facility and maintain records, in accordance with the Attorney General Mandatory Guidelines.

83. Defendant has failed, and continues to fail, to adhere to the requirements of the Attorney General Mandatory Guidelines.

84. Defendant's failure to adhere to the Attorney General Mandatory Guidelines has created, and continues to create, a significant and unjustifiable public safety risk, as well as a significant and unjustifiable safety risk to the canines and handlers assigned to the K-9 Unit.

**WHEREFORE**, Plaintiffs demand judgment against Defendant for violations of the Attorney General Mandatory Guidelines on K-9 Training Standards and Qualification Requirements for New Jersey Law Enforcement and for:

i. Judgment declaring that Defendant has willfully, recklessly and knowingly violated Attorney General Mandatory Guidelines on K-9 Training Standards and Qualification Requirements for New Jersey Law Enforcement; and for

    ii.    An Order compelling Defendant to immediately and permanently adhere to the Attorney General Mandatory Guidelines on K-9 Training Standards and Qualification Requirements for New Jersey Law Enforcement; and for

    iii.    Reasonable Attorney's Fees and Costs of Suit; and for

    iv.    Such other relief as this Honorable Court deems equitable and just.

## DUTY TO PRESERVE

All applicable employment, training and work records of the K-9 Unit are in the exclusive possession, custody and control of Defendant. Defendant is hereby notified of the duty imposed by 29 U.S.C. § 211(c) to maintain and preserve payroll, training and other employment records with respect to the K-9 Unit, so that the sum of Defendants' liability may be ascertained.

## DESIGNATION OF TRIAL COUNSEL

VALERIE PALMA DELUISI, ESQ. is hereby designated as trial counsel for Plaintiffs.

## TRIAL BY JURY

Plaintiffs hereby request trial by jury as to all matters so triable.

## CERTIFICATION

The undersigned attorney for Plaintiffs hereby certifies that to the best of her knowledge, information and belief, the matter is controversy is not the subject of any other action and/or arbitration proceeding, nor is any other action or arbitration proceeding contemplated at this time.

The undersigned further certifies that to the best of her knowledge, information and belief, no other party should be joined in the within action at this time.

                        Respectfully Submitted,
                        **LAW OFFICES OF NICHOLAS J. PALMA, ESQ., P.C.,**
                        *Attorneys for Plaintiffs*

Dated: September 10, 2017    By: s/*Valerie Palma DeLuisi*
                                        Valerie Palma DeLuisi, Esq.