NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| PBA LOCAL 183, DOLORES M. PALADINO and MARISOL PAGAN,<br><br>Plaintiffs,<br>v.<br><br>COUNTY OF ESSEX,<br><br>Defendant. | : : : : : : : : : : : | **CONSOLIDATED ACTIONS**<br><br>**Civil Action No. 17-06962 (SRC)** |
| PBA LOCAL 183, STEVEN SALVATORIELLO, CARMELO VINCI, MICHAEL TESEI and ROBERT SUTTON,<br><br>Plaintiffs,<br>v.<br><br>COUNTY OF ESSEX,<br><br>Defendant. | : : : : : : : : : : : : : : | **Civil Action No. 19-13296 (SRC)**<br><br><br>**OPINION** |

**CHESLER**, District Judge

This matter comes before the Court on Plaintiffs' motion for leave to amend the

Complaint, Defendant's cross-motion to dismiss the Complaint ("PBA I") and enforce

settlement, and Defendant's motion to dismiss the Complaint ("PBA II") and enforce

settlement.[1] On June 7, 2019, PBA Local 183, Dolores M. Paladino and Marisol Pagan ("PBA I

Plaintiffs") filed a motion to amend the Complaint in the PBA I action. Defendant filed a cross-

---

[1] PBA I refers to the original action brought by PBA Local 183, Dolores Paladino, and Marisol Pagan in 2017 (No. 17-6962). PBA II refers to the subsequent action brought by PBA Local 183, Steven Salvatoriello, Carmelo Vinci, Michael Tesei, and Robert Sutton in 2019 (No. 19-13296).

motion to dismiss the Complaint and enforce settlement, and Defendant filed an additional motion to dismiss the PBA II Complaint and enforce settlement. On July 1, 2019, Magistrate Judge Cathy Waldor issued an order consolidating the PBA I and PBA II actions.

The motions have been fully briefed, and the Court has reviewed the papers filed by the parties. It proceeds to rule on the motions without oral argument. See Fed. R. Civ. P. 78(b). For the reasons that follow, the Court will deny Plaintiffs' motion to amend the Complaint, deny Defendant's motion to dismiss the Complaint and enforce settlement, and grant-in-part and deny-in-part Defendant's motion to dismiss the PBA II Complaint.

## I.    BACKGROUND

This is a civil action wherein PBA I Plaintiffs seek judgment against Defendant based on the following claims: violations of the Fair Labor Standards Act; promissory estoppel; reimbursement for damage to and maintenance of Plaintiffs' personal vehicles; and violation of the Attorney General K-9 Training Standards and Qualification Requirements for New Jersey Law Enforcement. PBA I Plaintiffs' proposed Amended Complaint removes its claim for reimbursement for damage to Plaintiffs' personal vehicles and adds the following claims: violation of the anti-retaliation provision of the Fair Labor Standards Act and violation of the Conscientious Employee Protection Act.

PBA II Plaintiffs seek judgment against Defendant based on the following claims: violations of the Fair Labor Standards Act; violation of the anti-retaliation provision of the Fair Labor Standards Act; violation of the Conscientious Employee Protection Act; and violation of the Attorney General K-9 Training Standards and Qualification Requirements for New Jersey Law Enforcement.

The factual summary below is based on the allegations within the PBA I and PBA II Complaints, and the PBA I Amended Complaint. The facts are taken as true for purposes of the motions to dismiss and the motion to amend the complaint only.

### a. PBA I COMPLAINT

Dolores Paladino and Marisol Pagan serve as Detectives within the Essex County Sheriff's Department. Plaintiff Paladino joined the Essex County Sheriff's Department in 2001 and was assigned to the K-9 Unit in 2005; Plaintiff Pagan was hired by the Sheriff's Department in 2005 and joined the K-9 Unit in 2010. In accordance with the practices of the Essex County Sheriff's Department, Plaintiffs Paladino and Pagan paid for and adopted their canine partners. Plaintiffs were responsible for the daily care of their canine partners, including "training, walking, feeding, grooming, cleaning, bonding, exercise, daily health inspections and veterinary visits," while the County of Essex was responsible for "funding the lifetime care and maintenance of the canine." (PBA I Compl. ¶¶ 11-12.)

In 2005, Plaintiff Pagan was assigned and partnered with a three-year-old German Shepherd named "Nero," who was trained in explosives detection. Plaintiff Pagan and Nero were partners from 2005 until 2009, when Nero was diagnosed with cancer and Defendant retired Nero from service. Upon Nero's retirement, Defendant ordered Plaintiff Pagan to adopt Nero, and Plaintiff Pagan complied with this order. Thereafter, Defendant refused to pay for Nero's maintenance and medical care. Rather, Plaintiff Pagan incurred significant expenses as a result of Nero's medical care and euthanasia, which occurred in 2009. Plaintiff Pagan concedes that the statute of limitations to recover for expenses related to Nero's medical care and maintenance has passed.

In 2009, Plaintiff Paladino adopted and paid for "Justin," a German Shepherd trained in explosives detection. Plaintiff Paladino and Justin were partnered together from 2009 to 2015, when Defendant obtained a new canine named, "Marko." Upon receiving Marko, Defendant partnered Plaintiff Paladino with Marko and forced Justin into retirement. Since Justin's retirement, Defendant has refused to pay for Justin's medical care, and Plaintiff Paladino continues to be financially responsible for these expenses.

As members of the K-9 Unit, Plaintiffs Pagan and Paladino were assigned patrol vehicles that were specially equipped for use with their canine partners. It was an established practice within the K-9 Unit that members of the Unit were equipped with such vehicles and permitted to transport their canines in same when traveling to and from work. However, upon learning that a retired member of the K-9 Unit filed a lawsuit against the county for violations of the FLSA, Essex County Sheriff Armando Fontoura "grounded" the vehicles assigned to members of the K-9 Unit. By ordering that the vehicles be grounded, members of the K-9 Unit were no longer permitted to drive their vehicles home at the end of their shifts. Additionally, Sheriff Fontoura ordered members of the K-9 Unit to kennel their canines at the Unit's headquarters whenever the canines were not "on duty." The Complaint asserts that compliance with this order was and remains detrimental to the "Bond Based Approach" of canine partnership employed by the Essex County Sheriff's Department K-9 Unit. One of the integral elements of the approach is that the canine resides in the home with their human partner, so as to strengthen the bond between the two.

Because of the significant safety risks associated with the forced kenneling of their canine partners whom they legally own, Plaintiffs Pagan and Paladino refused to comply with Sheriff Fontoura's order that the canines be kenneled at headquarters when off duty. Rather,

4

Plaintiffs Pagan and Paladino continue to have their canine partners reside in their homes and transport their canines to and from their homes in their personal vehicles. Plaintiffs contend that they have incurred substantial financial costs by transporting their canines in their personal vehicles.

The Complaint alleges that Plaintiffs are entitled to overtime pay for the time spent caring for their canine partners outside of their assigned working hours. Despite being aware of this, Defendant has failed to compensate Plaintiffs for the care that they have provided and continue to provide to their canines. Additionally, Defendant has failed to compensate Plaintiffs for overtime hours at the appropriate overtime rate per the FLSA.

Plaintiffs allege that Defendant has failed to comply with the mandatory K-9 Training Standards set forth by the New Jersey Attorney General in 1992, which were revised in 1995 and 2002. The Attorney General Mandatory Guidelines establish training standards and provide that "'law enforcement agencies with K-9 units or teams should establish clear policy and issue standard operating procedures on the use of police dogs.'" (PBA I Compl. ¶ 48 (quoting K-9 Training: K-9 Training Standards and Qualification Requirements for New Jersey Law Enforcement (revised July 2002), at 2).) Plaintiffs contend that they "have never seen Essex County Sheriff's K-9 Unit's standard operating procedures on the use of police dogs, if same even exists." (PBA I Compl. ¶ 49.) Moreover, the guidelines mandate that "specialty teams" consisting of a police officer handler and canine partner complete in-service field training exercises a minimum of four times a year. Plaintiffs allege that they are members of such specialty teams, yet they have failed to complete said in-service field training exercises. Finally, the Complaint notes that Defendant does not employ a trainer in accordance with the guidelines, does not provide requested off-site training to Plaintiffs, and does not comply with requirements

related to the training course located at the K-9 Unit's headquarters in West Orange, NJ. Plaintiffs have notified superior officers of these problems, but no corrective measures have been taken.

### b.   PBA I Amended Complaint

In Plaintiff's Amended Complaint, Plaintiffs plead the same facts alleged in their original Complaint and assert that, "once Plaintiffs and other members of the Essex County Sheriff's Department K-9 Unit began exercising their rights under the FLSA, Essex County Sheriff Armando B. Fontoura began engaging in acts of retaliation against Plaintiffs individually, as well as the K-9 Unit as a whole." (PBA I Am. Compl. ¶ 19.) Based on the alleged retaliatory acts, Plaintiffs claim that Defendant violated the anti-retaliation provision of the FLSA and violated the New Jersey Conscientious Employee Protection Act.

### c.   PBA II Complaint

Steven Salvatoriello, Carmelo Vinci, Michael Tesei and Robert Sutton work for the Essex County Sheriff's Department. During the statutorily relevant time period, Plaintiffs Carmelo Vinci, Michael Tesei and Robert Sutton served as Detectives and were assigned as Handlers to the K-9 Unit. During the same time period, Plaintiff Steven Salvatoriello was a Sergeant and was also assigned to the K-9 Unit. While serving in the K-9 Unit, and in accordance with the common practices of the Unit, Plaintiffs adopted their canine partners. The canine partners resided with Plaintiffs in their respective homes, and each Plaintiff was responsible for "walking, feeding, grooming, cleaning, bonding, exercise, health inspections and cleaning up after their canine partner(s), 365 days per year." (PBA II Compl. ¶ 13.) As a result of Plaintiffs' caring for their canine partners outside of their standard work hours, Plaintiffs contend that Defendant is obliged to compensate Plaintiffs for overtime. However, despite being aware of this obligation,

Defendant has failed to pay Plaintiffs for this work. Plaintiffs claim that, "[a]s a result of Defendant's actions, Plaintiffs have suffered and continue to suffer severe and substantial monetary damages." (PBA II Compl. ¶ 16.)

Plaintiffs further claim that "once members of the Essex County Sheriff's Department K-9 Unit began exercising their rights under the FLSA, Essex County Sheriff Armando B. Fontoura began engaging in acts of retaliation against Plaintiffs individually, as well as the K-9 Unit as a whole." (PBA II Compl. ¶ 17.) Plaintiffs allege that "[t]here exists a causal connection between the protected acts of the plaintiffs and the retaliatory actions of Essex County Sheriff Armando B. Fontoura," and claim that as a result of these retaliatory acts, Plaintiffs have suffered "severe and substantial monetary damages." (PBA II Compl. ¶¶ 17, 19.) Finally, the Complaint alleges that Defendant "refuses to allow training" in accordance with the Attorney General K-9 Training Standards and Qualification Guidelines for New Jersey Law Enforcement, and by doing so, has placed the canines, handlers, and the general public at a "significant safety risk." (PBA II Compl. ¶ 20-21.)  Plaintiffs also claim that Defendant's refusal to allow such training has resulted in monetary damages, public humiliation and loss of reputation.

### d. SETTLEMENT NEGOTIATIONS

The Court makes the following observations regarding the procedural history and alleged settlement of this matter: The original complaint in the PBA I action was filed on September 11, 2017. According to the certifications submitted by counsel for both Plaintiffs and Defendant, the parties initially engaged in settlement discussions during the Summer of 2018. From 2018 to 2019, counsel had conferred on various occasions via email and had sent drafts of the proposed memorandum of understanding to one another. Many of these emails were provided to the Court as exhibits that were referenced in and attached to counsel's certifications. The emails provided

to the Court show that settlement negotiations were ongoing between July 23, 2018 and March 7, 2019. On March 7, 2019, Plaintiffs' counsel emailed Defendant's counsel and agreed to the terms of the proposed settlement on behalf of Plaintiffs Pagan, Paladino, and PBA Local 183. Counsel advised that she would inform Judge Waldor's chambers that the matter had been settled. Thereafter, this Court issued an Order administratively terminating the action on March 11, 2019. On March 25, 2019, after Defendant's counsel filed an appeal of Judge Waldor's March 7, 2019 Order denying Defendant's motion for a protective order, Plaintiff's counsel filed a letter requesting that this Court reopen the litigation. Subsequently, on May 22, 2019, this Court issued an order reopening the action and returning the matter to the active calendar. Shortly thereafter, the instant motions were filed.

Based on the record before this Court, all settlement negotiations in this action were conducted independently by counsel for PBA I Plaintiffs and counsel for Defendant. Moreover, it appears that a material aspect of all proposed Memorandums of Understanding was the waiver of future claims, lawsuits or grievances for overtime payment relating to the care of the handlers' canine partners. Notably, the agreed upon settlement that defense counsel asks this Court to enforce includes the following provision: "The parties agree that so long as all parties remain in full compliance with the terms of this Agreement, no party shall file a lawsuit, grievance or unfair labor practice charge pertaining to the compensation of Handlers for time spent caring for and maintaining their canine partner." (ECF 46-3, Memorandum of Agreement, at 3.) Although this provision does not specifically include non-party handlers, defense counsel understood non-party handlers to be bound by this agreement based on their membership in PBA Local 183, which is a named party in the PBA I lawsuit. Thus, defense counsel asks the court to dismiss the PBA II lawsuit based on the aforementioned litigation waiver.

8

## II.   SUBJECT MOTIONS

On June 7, 2019, Plaintiffs filed a motion for leave to amend the Complaint. Plaintiffs seek to add retaliation claims to the Complaint. Specifically, Plaintiffs allege that Defendant violated the anti-retaliation provision of the Fair Labor Standards Act, and allege that Defendant violated the New Jersey Conscientious Employee Protection Act ("CEPA").

In response, Defendant filed a cross motion to dismiss the Complaint, and a motion to dismiss the PBA II Complaint. In its motions to dismiss, Defendant argues that the PBA I action settled and a material element of the settlement was the parties' agreement that no further lawsuits or grievances would be filed for time spent caring for officers' canine partners. Defendant argues that PBA Local 183 agreed to this settlement on behalf of its members, thereby binding the PBA II individual Plaintiffs, namely Steven Salvatoriello, Carmelo Vinci, Michael Tesei and Robert Sutton, to the settlement agreement. Thus, Defendant argues that the settlement agreement in the PBA I matter should be enforced, noting that enforcement of this settlement would bar all additional claims.

Defendant further argues that the retaliation claims should be dismissed because Plaintiffs fail to plead that they engaged in protected activity under the FLSA or whistleblowing activity under the CEPA. Moreover, Defendant argues that Plaintiffs' CEPA claims are time barred and that PBA Local 183 lacks standing to maintain a claim under the FLSA.

In Plaintiffs' response to Defendant's motions to dismiss, Plaintiffs contest whether the parties ever reached an agreed-upon settlement in the PBA I matter; further, Plaintiffs note that defense counsel was expressly advised that PBA Local 183 could not bind the non-party handlers to the Memorandum of Agreement, and that neither PBA Local 183 nor counsel had the express or apparent authority to waive the individual rights of the non-party handlers to retroactive relief

9

under the FLSA. Plaintiffs argue that the motions to dismiss must be denied because Plaintiffs

state a claim upon which relief can be granted, the motion to dismiss the PBA I complaint is

barred because Defendant already answered the complaint, and the motion to dismiss the

amended complaint is premature since the amended complaint has yet to be filed.

### III.   DISCUSSION

#### a.   MOTION TO AMEND THE COMPLAINT

Plaintiff moves for leave to amend the Complaint in the PBA I matter. Plaintiff seeks to

add claims that Defendant violated the anti-retaliation provision of the Fair Labor Standards Act

and violated New Jersey's Conscientious Employee Protection Act. See 29 U.S.C. § 215(a)(3);

N.J.S.A. 34:19-1.

Federal Rule of Civil Procedure 15(a) directs that leave to amend a pleading "shall be

freely given when justice so requires." Grounds for denying leave to amend include but are not

limited to undue delay, bad faith, undue prejudice, and futility of the proposed amendment.

Foman v. Davis, 371 U.S. 178, 182 (1962). "Futility 'means that the complaint, as amended,

would fail to state a claim upon which relief could be granted.'" Great Western Mining &

Mineral Co. v. Fox Rothschild LLP, 615 F.3d 159, 175 (3d Cir. 2010) (quoting In re Merck &

Co. Sec., Derivative, & ERISA Litig., 493 F.3d 393, 400 (3d Cir. 2007) (other citations

omitted)). When assessing the viability or futility of a proposed amendment, the court must apply

the same legal standard of legal sufficiency as applies under Rule 12(b)(6). In re Burlington Coat

Factory Sec. Lit., 114 F.3d 1410, 1434 (3d Cir. 1997).

In the matter at bar, Defendant filed a motion to dismiss PBA II Plaintiffs' claims that

Defendant violated the anti-retaliation provision of the FLSA and violated the CEPA. Defendant

filed this motion under Rule 12(b)(6), claiming that Plaintiffs fail to state a claim. The claims

that Plaintiff seeks to add to the PBA I Complaint in its motion to amend the complaint are the same claims that Defendant moves to dismiss for failure to state a claim. Significantly, the facts pled in both Complaints are nearly identical. Because courts are to apply the same legal standard when evaluating both motions, the Court will address Plaintiff's motion for leave to amend the Complaint within the Court's discussion herein of Defendant's motion to dismiss the same claims brought in the PBA II Complaint, in Section III(b)(ii). The Court will determine whether granting Plaintiffs' motion would be futile based on its decision regarding Defendant's Rule 12(b)(6) motion.

### b.  MOTIONS TO DISMISS & ENFORCE SETTLEMENT

In response to Plaintiff's motion for leave to amend the Complaint, Defendant filed a cross-motion to dismiss based on several, independent grounds. Defendant also filed a motion to dismiss the Complaint in the PBA II matter for the same reasons. Defendant argues that the Complaints should be dismissed because the matter settled and the parties agreed that Plaintiffs would not file any further claims under the FLSA. Defendant asks this Court to enforce the settlement thereby barring further litigation. Alternatively, Defendant moves to dismiss Plaintiff's retaliation claims under the FLSA and the CEPA based on the following grounds: Plaintiffs fail to plead that they engaged in protected activity under the FLSA or whistleblowing activity under the CEPA, and Plaintiffs' CEPA claims are time-barred. Finally, Defendant moves to dismiss claims brought under the FLSA by the union, PBA Local 183, based on its argument that PBA Local 183 lacks standing to maintain a claim brought under the FLSA.

Accordingly, the Court will address each of Defendant's arguments made in support of its motion to dismiss the PBA I action and its motion to dismiss the PBA II action.

### i. Enforcement of Settlement

Defendant filed a motion to dismiss and enforce the March 2019 settlement agreement that was allegedly reached in the PBA I action.[2] A provision of this settlement is that "no party shall file a lawsuit, grievance or unfair labor practice charge pertaining to the compensation of Handlers for time spent caring for and maintaining their canine partner." (ECF 46-3, Memorandum of Agreement, at 3.) Thus, enforcement of the settlement would result in the termination of the PBA I action and the dismissal of the PBA II action. The critical issue before this Court is whether the parties entered into a valid settlement agreement.

The Court notes that New Jersey has a strong public policy in favor of settlements. See Nolan v. Lee Ho, 120 N.J. 465, 472 (1990). Courts will therefore "strain to give effect to the terms of a settlement wherever possible." Dep't of Pub. Advocate v. N.J. Bd. of Pub. Util., 206 N.J. Super. 523, 528 (App. Div. 1985). Moreover, a settlement agreement is a form of a contract. Mortellite v. Novartis Crop Prot., Inc., 460 F.3d 483, 492 (3d Cir. 2006) (citing Borough of Haledon v. Borough of N. Haledon, 358 N.J. Super. 289, 305, (App. Div. 2003)). When parties voluntarily enter into a settlement agreement to resolve a lawsuit, the resulting contract is binding upon them. Green v. John H. Lewis. & Co., 436 F.2d 389, 390 (3d Cir. 1970).

Typically, when disputes about settlement agreements arise, courts must look to general principles of local contract law to resolve the issues. See id. Notably, the proposed settlement agreement that Defendant seeks to enforce primarily addresses the settlement of claims for

---

[2] The Court will address the pending motion as a motion to enforce settlement, rather than a motion to dismiss. The Court's decision regarding Defendant's motion to enforce the settlement may result in the dismissal of the action, but the Court recognizes that in order to adjudicate the subject motion, the Court must consider more than the Complaint and accompanying documents. See Tiernan v. Devoe, 923 F.2d 1024, 1032 (3d Cir. 1991) (applying the same standard of review when deciding a motion for summary judgment and a motion to enforce a settlement). Thus, the Court will treat Plaintiffs' assertions as true, and will grant defendant's motion only if defendant is "entitled to enforcement of the agreement[] as a matter of law." Id.

overtime compensation brought by Plaintiffs under the Fair Labor Standards Act. Because there exist specific requirements that must be met when settling claims brought under the FLSA, the Court will determine whether the parties adhered to these statutory and common law requirements and whether a valid, enforceable settlement was reached in this case. If the Court finds that these requirements were met, the Court will then look to the principles of contract law to determine whether an enforceable contract was created. See United States v. Lightman, 988 F. Supp. 448, 458 (D.N.J. 1997) (finding that a "contract is enforceable if the parties agree on essential terms, and manifest an intention to be bound by those terms").

"The FLSA establishes federal minimum-wage, maximum-hour, and overtime guarantees that cannot be modified by contract." Genesis Healthcare v. Symczyk, 569 U.S. 66, 69 (2013). The statute mandates that employers pay employees for all hours worked, including a "time-and-one-half" overtime premium for all hours worked over 40 hours in one workweek. 29 U.S.C. §§ 206-207. Under Department of Labor regulations, an employer must compensate employees if it "knows or has reason to believe that [the employee] is continuing to work . . . ." 29 C.F.R. § 785.11; see also Mumbower v. Callicott, 526 F.2d 1183, 1188 (8th Cir. 1975) ("The term 'work' is not defined in the FLSA, but it is settled that duties performed by an employee before and after scheduled hours, even if not requested, must be compensated if the employer 'knows or has reason to believe' the employee is continuing to work, 29 C.F.R. § 785.11 (1974), and the duties are an 'integral and indispensable part' of the employee's principal work activity.").

District courts throughout the United States have held that the settlement of a claim under the Fair Labor Standards Act requires 1) supervision of the Department of Labor, or 2) approval from the district court. See Brumley v. Camin Cargo Control, Inc., Nos. 08-1798, 10-2461, 09-6128, 2012 WL 1019337, at *1 (D.N.J. March 26, 2012) ("Employees have two avenues for

compromising an FLSA claim: (1) a compromise supervised by the Department of Labor

pursuant to 29 U.S.C. § 216(c); and (2) a district court-approved compromise pursuant to 29

U.S.C. § 216(b).").

While not controlling in this circuit, the Eleventh Circuit's decision in Lynn's Food

Stores, Inc. v. United States is often cited by district courts to support the proposition that FLSA

settlements require either supervision from the Department of Labor, or approval by the district

court. See Bettger v. Crossmark, Inc., 13-2030, 2015 WL 279754, at *3 (M.D.Pa. Jan. 22, 2015)

("In the absence of guidance from the Third Circuit, courts have routinely employed the

considerations set forth by the Eleventh Circuit in Lynn's Food Stores to evaluate proposed

settlement agreements."). In Lynn's Food, the Eleventh Circuit stated:

> There are only two ways in which back wage claims arising under
> the FLSA can be settled or compromised by employees. First,
> under section 216(c), the Secretary of Labor is authorized to
> supervise payment to employees of unpaid wages owed to them.
> An employee who accepts such a payment supervised by the
> Secretary thereby waives his right to bring suit for both the unpaid
> wages and for liquidated damages, provided the employer pays in
> full the back wages.
>
> The only other route for compromise of FLSA claims is provided
> in the context of suits brought directly by employees against their
> employer under section 216(b) to recover back wages for FLSA
> violations. When employees bring a private action for back wages
> under the FLSA, and present to the district court a proposed
> settlement, the district court may enter a stipulated judgment after
> scrutinizing the settlement for fairness.

Lynn's Food Stores, Inc. v. United States, 679 F.2d 1350, 1352-53 (11th Cir. 1982) (citing

Schulte, Inc. v. Gangi, 328 U.S. 108 (1946); Jarrard v. Southeastern Shipbuilding Corporation,

163 F.2d 960, 961 (5th Cir. 1947)).

Recognizing that the Third Circuit has yet to address whether claims brought under the

FLSA can be settled privately, district courts within the Third Circuit have consistently held that

either supervision from the Department of Labor or approval from the district court is required to settle such claims. See Rabbenou v. Dayan Foods, Ltd. No. 17-1330, 2017 WL 3315263, at *1, n.1 (D.N.J. Aug. 3, 2017) ("District courts in the Third Circuit have held that FLSA claims can be settled in two ways: (i) with the Department of Labor supervising the payment of unpaid minimum wages or overtime compensation pursuant to § 29 U.S.C. 216(c); or (ii) with the district court's approval of a settlement under 29 U.S.C. § 216(b)."). [3]

Based on the foregoing, this Court finds that a settlement of claims under the FLSA requires 1) that the settlement be supervised by the Department of Labor, or 2) that the settlement agreement be approved by the District Court. [4] Here, Defendant's proposed settlement agreement fails to meet either of these requirements. There is no evidence in the record that the Department of Labor had any involvement in, much less supervised, the settlement negotiations and purported agreement. Nor did this Court approve the proposed settlement. Rather, the parties independently negotiated the agreement amongst themselves. Thus, because the settlement was not supervised by the Department of Labor nor approved by this Court, the Court finds that the settlement agreement is invalid and cannot be enforced.

---

[3] The District Court, in Rabbenou v. Dayan Foods, cites the following cases which have similarly found that the settlement of claims under the FLSA requires either the supervision of the Department of Labor or the approval by the District Court: Gabrielyan v. S.O. Rose Apartments LLC, No. 15–1771, 2015 WL 5853924, at *1 (D.N.J. Oct. 5, 2015); Brumley v. Camin Cargo Control, Inc., No. 08–1798, 2012 WL 1019337, at *1 (D.N.J. Mar. 26, 2012); In re Chickie's & Pete's Wage & Hour Litig., No. 12–6820, 2014 WL 911718, at *2 (E.D. Pa. Mar. 7, 2014). See also Kraus v. PA Fit II, LLC, 155 F.Supp.3d 516, 524-25 (E.D. Pa. 2016).

[4] The FLSA was enacted to ensure that employees are properly compensated for their work and prevent workers from working oppressive hours. The principles animating the Eleventh Circuit's decision in Lynn's Foods are the same principles that resulted in the enaction of this statute: namely, the need to protect employees from "sub-standard wages and excessive hours which endangered the national health and well-being and the free flow of goods in interstate commerce." See Brooklyn Sav. Bank v. O'Neil, 324 U.S. 697, 706 (1945).

In the matter at bar, the legitimacy of the settlement is disputed which only serves to highlight the need for and significance of the requirements promulgated by the Eleventh Circuit, which have since been adopted by numerous Courts of Appeals and District Courts throughout the United States. Without supervision by the Department of Labor or approval by the District Court, contested and arguably unfair settlement agreements could potentially become legal contracts. Allowing this would circumvent the important protections created by the FLSA.

The Court further notes that the agreement that was seemingly agreed upon by both parties' counsel on March 7, 2019 included a monetary figure that was to be paid to non-party handlers for overtime pay as well as a litigation waiver that was to be binding upon non-party handlers. The payment for overtime was to settle any potential compensation claims for overtime pay, claims which would fall under the purview of the FLSA, that may have been brought by the non-party handlers. This settlement amount was to be awarded to the non-party handlers and would foreclose these individuals from filing their own lawsuits under the FLSA. Additionally, the litigation waiver would bar any further suits for both the named PBA I Plaintiffs and the non-party handlers.

Here, PBA I Plaintiffs attempted to reach a settlement with Defendant that would bind similarly situated employees, the non-party handlers, to the same agreement. Section 216(b) of the FLSA provides "employees the right to bring a private cause of action on their own behalf and on behalf of 'other employees similarly situated' for specified violations of the FLSA." Genesis Healthcare Corp. v. Symczyk, 569 U.S. 1523, 1527 (2013). "A suit brought on behalf of other employees is known as a 'collective action.'" Id. (citing Hoffmann–La Roche Inc. v. Sperling, 493 U.S. 165, 169–170 (1989)).

In order to become party plaintiffs to an FLSA collective action lawsuit, such similarly situated employees must affirmatively "opt in" by filing express, written consent. 29 U.S.C. § 216(b) ("[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought."). "An employee's failure to opt in does not prevent him or her from bringing a separate suit at a later date." Brumley v. Camin Cargo Control, Inc., Nos. 08-1798, 10-2461, 09-6128,

2012 WL 1019337, at *1 (D.N.J. Mar. 26, 2012) (citing Pentland v. Dravo Corp., 152 F.2d 851,

853 (3d Cir. 1945); Lusardi v. Lechner, 855 F.2d 1062, 1070 (3d Cir. 1988)).

In the matter at bar, not only is the purported settlement agreement invalid, but neither

party presents any evidence that the non-party handlers affirmatively "opted in" to the PBA I

action. In order to potentially bind the non-party handlers to the March 2019 settlement

agreement, the parties must present evidence that these individuals joined an FLSA collective

action lawsuit. See 29 U.S.C. § 216(b). Rather, the record is clear that the non-party handlers

rejected the settlement that Defendant and the PBA I Plaintiffs attempted to reach, and after

being presented with the negotiated settlement terms, the non-party handlers filed their own

lawsuit (PBA II). Moreover, the non-party handlers did not participate in any settlement

negotiations because they had never joined the collective action lawsuit, as required under 29

U.S.C. § 216(b). The fact that this statutory requirement was not met provides this Court with an

alternative basis to deny defendant's motion to enforce the settlement.

### ii.  Motion to Dismiss Retaliation Claims

Defendant moves to dismiss Counts III and IV of the PBA II Complaint, and Counts IV

and V of the proposed Amended Complaint in the PBA I action under Fed. R. Civ. P. 12(b)(6).[5]

Defendant argues that Plaintiffs' retaliation claims should be dismissed because Plaintiffs fail to

plead that they engaged in protected activity under the FLSA or whistleblowing activity under

the CEPA.

---

[5] Plaintiffs contend that Defendant's motion to dismiss counts IV and V of the proposed Amended Complaint in the PBA I action are premature because the Amended Complaint has yet to be filed. For reasons already stated in this Opinion, the Court will address Plaintiffs' motion for leave to amend the Complaint under the legal standard applied in a motion to dismiss under Rule 12(b)(6). Thus, by ruling on Defendant's motion to dismiss, the Court will simultaneously address and then rule on Plaintiff's motion for leave to amend the Complaint.

The issue before the Court on a Rule 12(b)(6) motion to dismiss "is not whether plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence in support of the claims." In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1420 (3d Cir. 1997) (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). To make that determination, the Court must employ the standard of review articulated by the Supreme Court in Bell Atlantic Corp. v. Twombly and Ashcroft v. Iqbal. A complaint will survive a motion under Rule 12(b)(6) only if it states "sufficient factual allegations, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic v. Twombly, 550 U.S. 544, 570 (2007)). The plausibility standard will be met if the complaint "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556.) While the complaint need not demonstrate that a defendant is probably liable for the wrongdoing to meet the pleading standard of Federal Rule of Civil Procedure 8(a), allegations that give rise to the mere possibility of unlawful conduct will not do.[6] Iqbal, 556 U.S. at 678; Twombly, 550 U.S. at 557.

To plead a retaliation claim under the FLSA, one must plead facts establishing that: "(1) the employee engaged in protected employee activity; (2) adverse action by the employer either

---

[6] In response to Defendant's argument that Plaintiffs fail to adequately plead claims under the FLSA or CEPA, Plaintiffs cite Swierkiewicz v. Sorema, N.A., a 2002 Supreme Court decision holding that a complaint "must simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests" in order to satisfy the pleading requirements. 534 U.S. 506, 512 (2002) (internal quotations omitted). The Court's decision in Swierkiericz was pre-Twombly and Iqbal, and was based on Conley v. Gibson. See Petruska v. Reckitt Benckiser, LLC, 14-3663, 2015 U.S. Dist. LEXIS 38935, at *10-*11) ("The pleading requirements as discussed in Swierkiewicz were based on the Conley v. Gibson standard which permitted district courts to dismiss a complaint for failure to state a claim only if "it appear[ed] beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." (quoting Conley v. Gibson, 355 U.S. 41, 45-46, (1957))). After the Court established the heightened pleading standard under Twombly and Iqbal, the Third Circuit held that "because Conley has been specifically repudiated by both Twombly and Iqbal, so too has Swierkiewicz, at least insofar as it concerns pleading requirements and relies on Conley." Fowler v. UPMC Shadyside, 578 F.3d 203, 211 (3d Cir. 2009). This Court accordingly rejects the pleading standard cited by Plaintiff and will apply that which is required under Twombly and Iqbal.

after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action." <u>Goins v. Newark Hous. Auth.</u>, No. 15-2195, 2019 U.S. Dist. LEXIS 54493, at *31 (D.N.J. Mar. 29, 2019) (citing <u>Marra v. Phila. Hous. Auth.</u>, 497 F.3d 286, 300 (3d Cir. 2007)). Similarly, to plead a cause of action under CEPA, the Complaint must plead facts establishing the following elements: "(1) she had a reasonable belief that her employer's conduct violated a law, regulation, or clear mandate of public policy; (2) she performed a "whistle-blowing" activity under the act; (3) the employer took an adverse employment action against her; and (4) a causal connection exists between the whistle-blowing activity and the adverse employment action." <u>Id.</u> at *41-*42 (citing <u>Dzwonar v. McDevitt</u>, 177 N.J. 451 (N.J. 2003); <u>Samowski v. Air Brooke Limousine, Inc.</u>, 510 F.3d 398, 404 (3d Cir. 2007)).

In order to plead a colorable retaliation claim under the FLSA, the Complaint must plead factual allegations establishing that the employer engaged in an adverse action "either after or contemporaneous with the employee's protected activity." <u>Id.</u> at *31 (citations omitted). In both the PBA I Amended Complaint and PBA II Complaint, Plaintiffs assert that the alleged retaliatory acts by Essex County Sheriff Armando B. Fontoura included:

> [R]efusal by Essex County Sheriff Armando B. Fontoura to replace an inoperable agility course at the K-9 Unit Headquarters, which is required for proper training of canines in the Unit and also mandated to be functional by the Attorney General Mandatory Guidelines; refusal by Essex County Sheriff Armando B. Fontoura to allow K-9 Handlers to attend training with an outside agency, refusal by Essex County Sheriff Armando B. Fontoura to allow retirement of uncertified canines and adoption of new canines; General Order by Essex County Sheriff Armando B. Fontoura that Handlers leave their canine partners at the K-9 Unit Headquarters at all times they are not on duty; verbal order of Essex County Sheriff Armando B. Fontoura directing Handlers to transport their canine partners to and from work in personal vehicles, rather than specially designed County-issued vehicles which contain numerous

> safety features for the canine and the Handler; threats by Essex
> County Sheriff Armando B. Fontoura to close the K-9 Unit if the
> within Plaintiffs proceeded with the instant litigation.

(PBA II Compl. ¶ 18; See PBA I Am. Compl. ¶ 20.)

It is apparent that orders and policies enacted in the 2016 General Order cannot be the basis for a retaliation claim as these acts occurred before the initial complaint in the PBA I action was filed.  Specifically, it appears that the mandate that "[h]andlers leave their canine partners at the K-9 Unit Headquarters at all times they are not on duty" was put into effect on January 19, 2016 through the General Order which was issued on January 4, 2016. (PBA II Compl. ¶ 18; see Essex County Sheriff's Office General Order, G.O. No. 2016-02 (Jan. 4, 2016).) At the time Defendant imposed this mandate, Plaintiffs had yet to file their original Complaint and therefore had not exercised their rights under the FLSA nor had they engaged in any whistleblowing activity. Any claims based on this order therefore lack the temporal nexus necessary in establishing a valid retaliation claim. Thus, since Defendant could not retaliate against actions that had yet to occur, Plaintiffs fail to show how any actions taken by Defendant through the enforcement of the 2016 General Order support a retaliation claim under the FLSA or CEPA.

In both the PBA II Complaint and the PBA I Amended Complaint, Plaintiffs allege that Defendant began engaging in acts of retaliation "once members of the Essex County Sheriff's Department K-9 Unit began exercising their rights under the FLSA." (PBA II Compl. ¶ 17; see PBA I Am. Compl. ¶ 20.) The Complaints further assert that "[t]here exists a causal connection between the protected acts of the plaintiffs and the retaliatory actions of Essex County Sheriff Armando B. Fontoura." (PBA II Compl. ¶ 17; PBA I Am. Compl. ¶ 19.) Significantly, both the PBA II Complaint and the PBA I Amended Complaint fail to include any factual allegations

explaining what Plaintiffs' protected acts consisted of, and instead, simply claim that Plaintiffs participated in "protected acts."

While the Court must accept all factual allegations as true and construe the Complaint in the light most favorable to the Plaintiffs, it need not accept a "legal conclusion couched as a factual allegation[.]" Baraka v. McGreevey, 481 F.3d 187, 195 (3d Cir. 2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. Here, Plaintiffs fail to identify the protected acts they engaged in, and their claim simply includes a conclusory statement alleging that Plaintiffs filed a complaint and participated in "protected acts," and in response, Defendants engaged in retaliatory acts. However, without including some type of factual allegation establishing a causal nexus between the filing of the Complaint and defendant's actions, the Complaint cannot survive Defendant's motion under Rule 12(b)(6). The Court cannot determine what protected activities Plaintiffs' engaged in, other than the filing of the Complaint, and cannot find a causal nexus between the unidentified acts of Plaintiffs and Defendant's alleged response to these acts. See Preobrazhenskaya v. Mercy Hall Infirmary, 71 Fed. Appx. 936, 939 (3d Cir. 2003) (affirming the district court's finding that Plaintiff failed to establish a prima facie retaliation claim under the FLSA because Plaintiff failed to show a causal link between Plaintiff contacting the Department of Labor and Defendant firing her when the firing decision was made by an individual who had no knowledge that the employee had contacted the Department of Labor). Based on this, the Court finds that Plaintiffs fail to sufficiently plead a retaliation claim under the FLSA. Thus, Defendant's motion to dismiss count III of the PBA II Complaint alleging that Defendant violated the anti-retaliation provision under the FLSA is granted for failure to state a claim.

Applying the same legal standard, Plaintiff's motion for leave to amend the PBA I Complaint,

thereby allowing Plaintiff to add this claim to the Complaint, is denied based on futility.

Similarly, the Court finds that Plaintiffs fail to plead a claim under the CEPA. In their

Complaints, neither the PBA I or PBA II Plaintiffs allege that they engaged in any

whistleblowing activity, nor do they allege that they engaged in activities that could be

considered whistleblowing activities or protected activities under the CEPA. Rather, with respect

to their claims that Defendant violated the CEPA, both the PBA I Amended Complaint and the

PBA II Complaint state that "[u]pper management members of Defendant County of Essex . . .

committed acts of retaliation against Plaintiffs" and claim that "[t]hese acts of retaliation were

committed as a direct result of Plaintiffs exercising their rights under the FLSA." (PBA II

Compl. ¶¶ 38, 39; PBA I Am. Compl. ¶¶ 45, 46.) The Complaints conclude that, "[a]s Plaintiffs'

employer, Defendant and upper management agents thereof, violated the Conscientious

Employee Protection Act." (PBA II Compl. ¶ 39; PBA I Am. Compl. ¶ 46.) Notably, the

Complaints fail to allege that Plaintiffs "performed a 'whistle-blowing' activity under the act."

Goins v. Newark Hous. Auth., No. 15-2195, 2019 U.S. Dist. LEXIS 54493, at *41-*42 (D.N.J.

Mar. 29, 2019) (citations omitted). A factual allegation pleading this is a required element of a

cause of action under the CEPA. See N.J.S.A. § 34:19-3; Stapleton v. DSW, Inc., 931 F. Supp.

2d 635, 639 (D.N.J. 2013) (finding that Plaintiff asserted a CEPA claim when Plaintiff pled facts

establishing that she "was terminated in retaliation for her refusal to participate in DSW's policy

. . . because she reasonably believed that her failure to do so would be incompatible with a clear

mandate of public policy concerning the safety and welfare of children"). Moreover, the

Complaint must plead facts that establish "a causal connection exists between the whistle-

blowing activity and the adverse employment action." Goins v. Newark Hous. Auth., 15-2195,

2019 U.S. Dist. LEXIS 54493, at *41-*42 (D.N.J. Mar. 29, 2019) (citations omitted). However, without identifying what the whistle-blowing activity was, the Complaint fails establish this required causal nexus, and the Complaint cannot survive Defendant's motion to dismiss for failure to state a claim. Based on this, Defendant's motion to dismiss count IV of the PBA II Complaint alleging that Defendant violated New Jersey's CEPA is granted for failure to state a claim. Applying the same legal standard, Plaintiff's motion for leave to amend the PBA I Complaint is denied based on futility.

### iii.   CEPA Time Bar

Defendant moves to dismiss Plaintiffs' CEPA claims and argues that these claims are time barred. This argument applies to Count IV of the PBA II Complaint and Count V of the PBA I Amended Complaint.

The Third Circuit has indicated that motions to dismiss under Rule 12(b)(6) are generally disfavored when they are based on statute of limitations arguments because "the applicability of the statute of limitations often involves questions of fact for the jury." Jodek Charitable Trust, R.A. v. Vertical Net Inc., 412 F. Supp. 2d 469, 474 (E.D. Pa. 2006) (citing Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group Ltd., 181 F.3d 410, 425 (3d Cir. 1999)). In order to grant a motion to dismiss based on a statute of limitations argument, the time bar must be apparent on the face of the Complaint. See Bethel v. Jendoco Constr. Corp., 570 F.2d 1168, 1174 (3d Cir. 1978).

New Jersey's Conscientious Employee Protection Act provides a one-year statute of limitations. N.J.S.A. § 34:19-5 ("Upon a violation of any of the provisions of this act, an aggrieved employee or former employee may, within one year, institute a civil action in a court of competent jurisdiction."). The first CEPA claim filed in this matter was filed on June 2, 2019

and was included in the PBA II Complaint. Thus, Defendant's actions underlying Plaintiffs'
CEPA claims must have occurred no earlier than June 3, 2018.

Although Plaintiffs failed to include dates stating when any of Defendant's alleged
retaliatory actions took place, the Court notes that the 2016 General Order was issued on January
4, 2016 and went into effect on January 19, 2016. In this order, Sheriff Fontoura took a discrete
action by mandating that "K-9 handlers are to ensure all K-9s are lodged in K-9/Bomb
Headquarters when the [sic] not in service." (Essex County Sheriff's Office General Order, G.O.
No. 2016-02 (Jan. 4, 2016).) The 2016 General Order also enacted other policies and procedures
related to protocol responses as well as the care and maintenance of the department's canines. In
the one year period following issuance of this order, neither the PBA I Plaintiffs nor the PBA II
Plaintiffs filed a CEPA claim and, consequently, the statute of limitations has expired. Therefore,
to the extent that any of the CEPA claims are based on the 2016 General Order, the Court finds
that these claims are time barred. The court hereby dismisses with prejudice any claims brought
under the Conscientious Employee Protection Act which are predicated upon the 2016 General
Order.

### iv.  PBA Local 183's Standing to Maintain a Claim Under the FLSA

Defendants argues that several claims in both the PBA I and PBA II matters must be
dismissed because the claims were brought by PBA Local 183, rather than the individually
named Plaintiffs. Defendant argues that PBA Local 183 does not have standing to maintain a
claim as an individual plaintiff under the FLSA. In response, Plaintiffs clarify that only Count II
of the PBA I Complaint and Count II of the PBA II Complaint are brought exclusively by the
union. Plaintiffs contend that these claims are distinguishable from the other claims for
compensation in the Complaints, which were brought by the individual Plaintiffs themselves,

because these counts seek a bar to continued violations of the FLSA. Plaintiffs recognize that only an individual can plead a cause of action for compensation under the FLSA, but argues that PBA Local does have standing to seek an order directing Defendant to comply with the FLSA moving forward.

The parties correctly agree that PBA Local 183 does not have standing to plead a cause of action for compensation under the FLSA as these claims can only be brought by "one or more employees for and on behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). However, in the matter at bar, PBA Local is not pleading a claim for compensation. Rather, the union is seeking an Order directing Defendant to comply with the compensation procedures required under the FLSA. By bringing this action on behalf of its members, PBA Local 183 asserts that it has representative standing to plead this claim. The question before this Court is whether PBA Local 183 has the required standing to bring such a claim.

The Constitution and the courts have imposed requirements for plaintiffs to have proper standing to bring suits in order to ensure that a plaintiff possesses "such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends . . . ." Baker v. Carr, 369 U.S. 186, 204 (1962). Associational standing may permit an organization to redress injuries to its members, even without a showing of any injury to the organization itself. United Food and Commercial Workers Union v. Brown Group, Inc., 517 U.S. 544, 552 (1996). The Supreme Court has set out three requirements for an associational plaintiff like PBA Local 183 to have standing under Article III to sue on behalf of its members: (1) its members must have standing to sue on their own; (2) the interests it seeks to protect must be germane to the organization's

purpose; and (3) neither the claim asserted nor the relief requested may require the participation

of individual members in the lawsuit. Hunt v. Washington State Apple Adver. Comm'n, 432 U.S.

333, 343 (1977); see also Int'l Union v. Brock, 477 U.S. 274, 282-290 (1986) (applying the Hunt

factors and finding that International Union, United Automobile, Aerospace and Agricultural

Implement Workers of America, had associational standing to bring suit on behalf of its

members).

Here, the Court finds that PBA Local 183 has associational standing to bring a claim

barring future violations of the FLSA. Hunt requires that at least one of PBA Local 183's

members would have had "standing to present, in his or her own right, the claim (or the type of

claim) pleaded by the association." United Food, 517 U.S. at 555. In both the PBA I and PBA II

Complaints, Plaintiffs have presented facts establishing that individual members of the union

have suffered tangible injury as a result of Defendant's violations of the FLSA, thereby

warranting the requested relief that PBA Local 183 seeks on behalf of its members. "At the

pleading stage, general factual allegations of injury resulting from the defendant's conduct may

suffice, for on a motion to dismiss we 'presume that general allegations embrace those specific

facts that are necessary to support the claim.'" Lujan v. Defenders of Wildlife, 504 U.S. 555, 561

(1992) (quoting Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 889 (1990)). Accordingly, the Court

is satisfied that the Plaintiff has sufficiently demonstrated, for purposes of evaluating the

Defendant's motion for dismissal, that at least some of their members have standing to sue in

their own right - thereby satisfying the first requirement of Hunt. Second, Hunt requires that the

interests the organization seeks to protect be germane to the organization's purpose. Clearly, this

prong is satisfied. Through its claim, the union seeks to protect its members from unfair

employment practices and seeks to ensure that its members are properly compensated for their

work. This is one of the key interests of the union, and accordingly, the Court finds that the second <u>Hunt</u> prong is met. Finally, <u>Hunt</u> requires that neither the claim asserted nor the relief requested require the participation of individual members in the lawsuit. Here, the union is seeking an Order that Defendant complies with the requirements of the FLSA. The Court notes that this claim can be brought and the requested relief may be granted without the participation of the union's individual members thereby satisfying the third requirement under <u>Hunt</u> and conferring associational standing upon PBA Local 183.

Thus, because PBA Local 183 has associational standing permitting it to bring a claim barring further violations of the FLSA, the Court denies Defendant's motion to dismiss as it relates to Count II of the PBA I Complaint and Count II of the PBA II Complaint.

## IV.   CONCLUSION

For the foregoing reasons, the Court will deny Plaintiff's motion to amend the Complaint and deny Defendant's motion to dismiss the Complaint and enforce settlement. The Court will grant-in-part and deny-in-part Defendant's motion to dismiss the PBA II Complaint. Accordingly, Counts III and IV of the PBA II Complaint are dismissed without prejudice. Finally, any claims brought under New Jersey's Conscientious Employee Protection Act that are predicated on the issuance of the 2016 General Order are dismissed with prejudice. An appropriate Order will be filed.

    s/ Stanley R. Chesler
STANLEY R. CHESLER
United States District Judge

Dated:  October 15, 2019